414 So.2d 661 (1982)
STATE of Louisiana
v.
Russell L. ENNIS.
No. 81-KA-2042.
Supreme Court of Louisiana.
May 17, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Mamoulides, Dist. Atty., Abbott J. Reeves, Stephen Wimberly, William Credo, III, Asst. Dist. Attys., for plaintiff-appellee.
C. Joseph Murray, New Orleans, for defendant-appellant.
DENNIS, Justice.[*]
Defendant, Russell Ennis, was convicted by a judge of receiving stolen things, La. R.S. 14:69, and sentenced to two years at hard labor. We reverse his conviction and sentence because the evidence does not warrant a finding beyond a reasonable doubt that he knew or had good reason to believe the thing, a 1976 Camaro automobile, was stolen when he received it.
La.R.S. 14:69 provides, in pertinent part:
"Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of the offenses."
Defendant concedes that the state proved he was in possession of an automobile, that *662 the automobile had value and was the subject of a theft. He contends, however, that there was no evidence to show that he knew or had good reason to believe that the automobile had been stolen.
The state called two witnesses at defendant's trial. The first was a deputy of the Jefferson Parish Sheriff's Office, who testified that on January 6, 1981 he observed a silver Camaro westbound on Interstate 10 with no tail lights. The car drove off the exit ramp onto Causeway Boulevard where it was stopped by the deputy. Ennis, the driver of the automobile, could not produce registration papers for the car. The Deputy could not remember whether the defendant told him that the papers were at his house or that the man who sold him the car was going to take care of the paper work. A computer check revealed the car had been stolen from Jimmy Mumphrey. The deputy advised defendant of his rights and placed him under arrest.
The state's second witness was Jimmy Mumphrey, the owner of the stolen vehicle. He testified that he purchased the car in June of 1979 for $2,900 and that it had been stolen in December of 1980. Mumphrey recalled that the registration papers had been in the glove compartment of the car when it was taken.
At the close of the state's case, defense counsel moved for an acquittal based on the contention that the state had failed to show that the defendant knew or had good reason to believe the car was stolen. The motion was denied.
One witness was called for the defense. Barbara Teston, the defendant's fiancee, testified that she had been at Ennis's house on the 29th or 30th of December, 1980 when a man who had identified himself as Jimmy Mumphrey was also there. He was driving a silver Camaro and took Ms. Teston and the defendant for a ride in the car. She testified that the Jimmy Mumphrey who had testified for the state was not the Jimmy Mumphrey she had met at her fiance's house.
Ms. Teston further testified that on New Year's Eve, December 31, 1980 or New Year's Day, January 1, 1981, Ennis and the person she knew as Mumphrey discussed the sale of the Camaro while at a bar where Ms. Teston worked. According to her testimony, Ennis gave Mumphrey $1,000 cash for the car. She did not see any papers transferred, but understood when the two men left that they were going to take care of the paper work. She saw her fiance later that night but he had not received any papers as of that time.
In State v. Walker, 350 So.2d 176 (La. 1977), this court held that "* * * R.S. 14:69 does not create any presumptions and the State must prove that the accused actually knew or had good reason to believe that the property had been stolen before a conviction under La., R.S. 14:69 can be obtained." We have also held that mere possession of stolen property does not create a presumption that the person in possession of the property received it with knowledge that it was stolen by someone else. State v. Nguyen, 367 So.2d 342 (La.1979); State v. Walker, supra, at 178.
The state argues that a person who purchases a car for $1,000 without receiving ownership papers has good reason to believe the car to be stolen. The state established that the owner of the 1976 Camaro purchased it in 1979 for $2,900. The owner testified that the fiberglass in the front of the car had a crack in it when he bought it. When it was returned to him after the theft both front fenders were dented and the back of the car had been damaged. He testified that this additional damage was not present at the time it was stolen. There was no testimony regarding the condition of the car at the time of the alleged sale to the defendant. The state did not establish the value of the car at the time of the arrest of the defendant. Therefore, we are unable to conclude that the price paid by defendant was so unusually low as to give the defendant good reason to believe the car to be stolen.
A person who purchases a car without receiving ownership papers may have reason to suspect that the car was the subject *663 of a theft. However, in order to obtain a conviction of receiving stolen things, the state must prove that the defendant knew or had good reason to believe the thing to be stolen. Mere suspicion, not rising to the level of certainty required to form a belief, is not enough. See, W. LaFave and A. Scott, Criminal Law, § 93, at 685, 686 (1972).
It is the defense position that R.S. 15:438 and Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), require a reversal of the conviction. Under the Jackson standard, the appropriate question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Guillot, 389 So.2d 68 (La.1980).
Regarding circumstantial evidence, R.S. 15:438 sets forth the rule that, in order to convict, the evidence must exclude every reasonable hypothesis of innocence. Under Jackson, the evidence is viewed in the light most favorable to the prosecution and from the viewpoint of a rational trier of fact. Therefore, when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Austin, 399 So.2d 158, 160 (La.1981).
Viewing the evidence in the light most favorable to the prosecution, we think that a rational trier of fact would have failed to conclude that beyond a reasonable doubt the defendant knew or had good reason to believe the vehicle had been stolen when he acquired it. Defendant's fiancee testified she saw him purchase the car for $1,000. Considering that the vehicle was about five years old and damaged, this price does not necessarily indicate that the auto had been the subject of a theft. The state proved that the defendant did not have a title certificate with him when he was arrested, but the evidence fails to establish that defendant acquired the vehicle without obtaining a title certificate or a bill of sale. Even if the defendant did not obtain a title certificate at the time of sale, this in itself did not furnish good reason for him to believe the car had been stolen. The defendant purchased the car on New Year's Day, only five days before his arrest. To experience a short delay in obtaining title papers to a car does not necessarily give a person good reason to believe the vehicle has been stolen. Without additional circumstantial evidence concerning the defendant's acquisition of the automobile, we conclude that the state's proof of the crime is not constitutionally sufficient in this case.
Accordingly, the defendant's conviction and sentence are reversed.
REVERSED.
LEMMON, J., concurs.
LANIER, J. Pro Tem., dissents with reasons.
WALTER I. LANIER, Jr., Justice Pro Tem. (dissenting).
I dissent from the result reached in this case and agree with the per curiam of the trial judge that the possession of the stolen automobile by the defendant under the facts and circumstances of this case created a reasonable inference that the defendant had good reason to believe that the vehicle was stolen.
Louisiana law requires all sellers of automobiles to deliver the certificate of title endorsed and signed to the buyer of the vehicle at the time of the sale. La.R.S. 32:705; State v. Skinner, 358 So.2d 280 (La. 1978). The purchaser of the automobile does not acquire a marketable title until he has obtained a certificate of title to the vehicle. La.R.S. 32:706. The purchaser of the automobile must apply for the certificate of title within five (5) days after the delivery of the vehicle. La.R.S. 32:707. Motor vehicle registration certificates or copies thereof are required to be kept in a motor vehicle at all times when it is operated upon a public highway of this State. La.R.S. 47:506(A).
*664 When the defendant was stopped by the deputy sheriff and asked to produce his driver's license and vehicle registration certificate, he was unable to do so, nor did he produce a certificate of title. The owner of the vehicle testified that he purchased it in June of 1979 for $2,900.00. The defense witness, Teston, testified that she observed the defendant purchase the vehicle in a bar for $1,000.00 cash on or about January 1, 1981, and that she did not observe any exchange of documents at that time. These facts and circumstances created a reasonable inference that the defendant had good reason to believe that the vehicle was stolen. The evidence presented by the State and the defense at the trial did not satisfactorily explain the defendant's receipt and possession of the stolen vehicle. In my opinion, viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could, and did, conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
It has been my experience that the crime of receiving stolen things, like other crimes against property such as theft and simple burglary, by design is not committed in the presence of witnesses to avoid detection. Thus, as a practical matter, there usually is no direct evidence of guilty knowledge, such as a confession or the testimony of a chance observer, and the case must stand or fall on circumstantial evidence. If the holding in the instant case prevails in the future, it will be exceedingly difficult, if not impossible, in the absence of direct evidence, to prove guilty knowledge in a case of receiving stolen things by circumstantial evidence only.
I have analyzed this case in accordance with the standard enunciated in State v. Mathews, 375 So.2d 1165 (La.1979) and its progeny because I am only a temporary (as distinguished from ad hoc) member of this Court and feel compelled because of the nature of this appointment to comply with the jurisprudential rules established by the permanent members of this Court.[1] In State v. Mathews, supra, a majority of this Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. For the reasons set forth herein, I feel that this holding is in error, that the view of Chief Justice Summers in his dissent in Mathews is correct, and that the permanent members of this Court should reconsider that holding.
Article 5, Section 5(C) of the Louisiana Constitution of 1974 establishes the scope of appellate review of this Court and specifically states that "In criminal matters, its appellate jurisdiction extends only to questions of law." Thus, by constitutional mandate, this Court has no jurisdiction to review questions of fact in criminal cases. This Court has consistently held in determining its jurisdiction that where there was no evidence of an essential element of a crime, there was a question of law presented that could be reviewed, but where there was some evidence of an essential element of a crime a question of the sufficiency of the evidence was presented and this was an issue of fact over which this Court had no jurisdiction. State v. Marcal, 388 So.2d 656 (La.1980); State v. Williams, 383 So.2d 369 (La.1980); State v. Hudson, 373 So.2d 1294 (La.1979); State v. Victor, 368 So.2d 711 (La.1979); State v. Rollins, 351 So.2d 470 (La.1977); State v. Madison, 345 So.2d 485 (La.1977). This Court is the final authority in determining what is a question of law or a question of fact for purposes of establishing appellate jurisdiction under the Louisiana Constitution. If reviewing the evidence (facts) to determine if it is sufficient *665 to establish proof of each essential element beyond a reasonable doubt is a question of law, what then would constitute a question of fact?
In explaining this constitutional limitation at the Louisiana Constitutional Convention of 1973, the chairman of the Judiciary Committee observed that "In criminal matters however the appellate jurisdiction is restricted to questions of law. This also is the present law in our Constitution and is continued without substance." Volume VI, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts page 721 on August 15, 1973. Some of the reasons for this rule were explained by Delegate (then Justice) Tate as follows:

"Ms. Zervigon Judge Tate, you were on this committee. Did you all consider extending review of the facts to criminal cases?

"Mr. Tate That is another question. I don't think we seriously did. I think someone proposed it. I don't think it carried with a second. But that's another question. I understand there is another amendment coming up on it.

"Ms. Zervigon Do you have any idea why serious consideration wasn't given to review the facts on criminal cases?

"Mr. Tate Well, that requires an awful long answer. The reason possibly is, tradition, the fact that we inherited that law from the Anglo-Saxon which traditionally limits review in criminal cases to law. The fact that as a matter of administration of justice, many times people were afraid that, for instance, an appeal on facts in criminal cases might involve, although I don't think it would, the district attorney being able to appeal the question of acquittal and things like that. I'm not giving you a completely square answer because it's very complicated the question you asked why there shouldn't be a review of facts in criminal cases. But for the administration of criminal justice, it's generally felt that .... that has just not been extended.

"Mr. Perez Judge, isn't it a fact that one of the reasons that you do not review the facts in criminal cases because a criminal case is always tried before a jury whereas most civil cases are tried before a judge without a jury.

"Mr. Tate That is a very good partial answer. Of course I think in misdemeanor cases, we only review law. But in the vast majority of cases that is true."
Volume VI, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts pages 728 and 729 on August 15, 1973.
I agree that Jackson v. Virginia, supra, mandates that when a court, trial or appellate, has jurisdiction to review the sufficiency of evidence (facts) in a criminal case, the standard to be followed is that set forth in that opinion. For example, trial judges in Louisiana have jurisdiction to review the facts of a case when a motion for a new trial is made on the grounds that the verdict is contrary to the evidence (LSA-C. Cr.P. art. 851[1]) or when there is a motion for a judgment of acquittal in a trial before a judge alone. (LSA-C.Cr.P. art. 778). If the trial judge finds that insufficient evidence has been presented to satisfy the Jackson v. Virginia standard, a judgment of acquittal or an order for a new trial, as appropriate, can be entered. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). However, in Mathews this Court observed at page 1168 of the Southern Reporter as follows:
"Thus, in Jackson, the United States Supreme Court held that due process requirements of the federal constitution are offended by a lesser standard of review than that enunciated by it. Although the issue arose in terms of federal habeas review, the Jackson holding also applies, inferentially, to state or federal direct review, where due process would be equally offended by a lesser standard."
I do not agree that Jackson v. Virginia mandates that state appellate courts must have jurisdiction to review facts (sufficiency of evidence as opposed to absence of evidence) in criminal cases. Federal appellate due process does not require any appellate review. United States v. MacCollom, *666 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976); Estelle v. Dorrough, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Rheuark v. Shaw, 628 F.2d 297 (5th Cir. 1980); Joensen v. Wainwright, 615 F.2d 1077 (5th Cir. 1980); Martin v. Blackburn, 521 F.Supp. 685 (E.D.La.1981); and State v. Fletcher, 341 So.2d 340 (La.1976). As long as the appellate procedures granted by a state are indiscriminately available to all persons convicted, a state may limit appeals on its own terms. State v. Bernos, 260 La. 1108, 258 So.2d 371 (La.1972); 16A C.J.S. Constitutional Law § 594 at pages 688-691.
The specific holding of Jackson v. Virginia is found at page 2792 of the Supreme Court Reporter as follows:
"We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254if the settled procedural prerequisites for such a claim have otherwise been satisfiedthe applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."
Jackson v. Virginia came from a State where there is no appeal as of right from a criminal conviction. See Jackson v. Virginia, supra, at page 2785 of the Supreme Court Reporter. Jackson was found guilty by a trial judge and took a writ to the Virginia Supreme Court which was denied. The United States Supreme Court did not comment on the constitutionality of the Virginia criminal appellate review scheme, and, obviously, made no comment about the Louisiana criminal appellate review scheme.
The history of Article 5, Section 5(C) of the Louisiana Constitution of 1974 shows that it was the intention of the delegates to the Louisiana Constitutional Convention and the people of Louisiana to limit the criminal appellate jurisdiction of this Court to questions of law as that term was understood at that time. By Act 843 of 1980 and a vote of the people of Louisiana on November 4, 1980, the policy of this State that appellate courts should not review questions of fact in criminal cases was restated when Article 5, Section 10(B) of the Constitution was amended to provide that for a court of appeal "In criminal cases its appellate jurisdiction extends only to questions of law." This language is identical to Article 5, Section 5(C). If it is determined that appellate courts in Louisiana should have jurisdiction to review the sufficiency of evidence in criminal cases for the proper administration of justice, a constitutional amendment should be submitted to the people to achieve that goal. The meaning and effect of the above constitutional provisions should not be changed jurisprudentially by inference, but only when there is a definitive judgment from the United States Supreme Court declaring that the Louisiana Constitutional scheme for the appellate review of criminal matters fails to meet federal constitutional due process muster. If federal courts wish to review the sufficiency of the evidence (facts) of all criminal convictions in state courts, that is their prerogative.
NOTES
[*] Judges Walter I. Lanier, Jr. of the Court of Appeal, First Circuit and Fred S. Bowes and Nestor L. Currault, Jr. of the Court of Appeal, Fifth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] As a practical matter, temporary members cannot effect a change in jurisprudence. We are only appointed for the original hearing and not the rehearing. Thus, if temporary members, in conjunction with permanent members, change a rule on original hearing, the prevailing majority of permanent members could re-instate the rule on rehearing.